WILLIAMS CUKER BEREZOFSKY LLC
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, NJ  08002
856-667-0500 (Fax: 856-667-5133)
By:     Joseph Alan Venti, Esquire (SBN 031742008)
          joeventi@wcblegal.com
*Attorneys for Plaintiff George J. Duffy*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY (TRENTON)**

———————————————————— x
                                 :

|  |  |
|---|---|
| GEORGE J. DUFFY<br>1510 River Avenue<br>Point Pleasant Boro, New Jersey 08742 | Civil Action No. _____ |
|           Plaintiff, |  |
|       v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| CENLAR FSB, d/b/a CENTRAL LOAN<br>ADMINISTRATION AND REPORTING<br>7 Graphics Drive<br>Ewing, New Jersey 08628 |  |
| and |  |
| MCCABE, WEISBERG & CONWAY, P.C.<br>216 Haddon Avenue, Suite 201<br>Westmont, New Jersey 08108, |  |
|          Defendants. |  |

———————————————————— X

I.    <u>**NATURE OF THE CASE**</u>

1.     This is an action for damages by Plaintiff George J. Duffy ("Duffy"), rooted in

loan-servicing and debt-collection abuses with respect to a first-lien mortgage on Duffy's

residential property.

2.     As set forth in this Complaint, Defendants Cenlar FSB ("Cenlar") and McCabe,

Weisberg & Conway, P.C. ("McCabe") violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, respectively.

## II.   PARTIES

3.      Duffy is a citizen of New Jersey who resides and is domiciled at the above-captioned address.

4.      Defendant Cenlar is a federally chartered savings bank having FDIC Certificate No. 30996.  Cenlar's principal place of business is in New Jersey at the above-captioned address.

5.      Doing business as "Central Loan Administration and Reporting," Cenlar (among other things) services residential mortgage loans.

6.      McCabe is a law firm with an office located at the above-captioned address.

## III.   JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Duffy's claims arise under federal law.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this District.

## IV.   FACTUAL ALLEGATIONS

9.      Duffy primarily financed the purchase of his home at the above-captioned address through a mortgage loan originated on December 21, 2007, by the Police & Firemen's Retirement System (through its agent, New Jersey Housing and Mortgage Finance Agency).  The loan amount was $284,000, and monthly payments were set at approximately $2,240.

10.     The loan was originally serviced by a company called Aurora Financial Group. Cenlar took over servicing in or around October 2013.

11.    Duffy was making consecutive, timely mortgage payments to Cenlar after it took over servicing.

12.    However, in January 2014 Duffy was forced to retire from his job with the Bay Head, New Jersey police department.

13.    Duffy became unemployed for several months.

14.    Even though he was unemployed, Duffy continued to make payments to Cenlar by depleting his savings.  That payment strategy was, of course, unsustainable.

15.    Duffy was eventually able to secure a few part-time jobs, but was not making enough to ensure that his mortgage payments would continue to be timely made.  He thus contacted Cenlar to apply for a loan modification.

16.    Cenlar denied Duffy's loan modification application on July 14, 2014.

17.    On July 25, 2014, Duffy appealed the July 14, 2014 denial.

18.    Also in July 2014, Duffy became delinquent on his mortgage obligations upon learning that the holder of his mortgage maintained guidelines requiring that the "Loan must be at least 90 days delinquent" in order for the borrower to be eligible for a loan modification.

19.    With respect to the July 25, 2014 appeal, even though Duffy's appeal package clearly stated "Please be advised that this writing shall serve as my appeal . . .," Cenlar by letter dated July 30, 2014, treated the appeal as a new application for a loan modification.

20.    Cenlar then sent Duffy a Notice of Intent to Foreclose, dated August 11, 2014.

21.    On August 17, 2014, Duffy provided supplemental documentation in support of his apparently new loan modification application.

22.    By letter dated August 27, 2014, Cenlar communicated to Duffy that his loan modification application was incomplete.  It requested "August bank statements" for Duffy's TD

Bank savings account and "proof of income from wife paystub or contribution letter with amount signed/dated."

23.     By letter dated September 5, 2014, Duffy provided Cenlar with correspondence from a TD Bank Financial Services Representative, enclosing Duffy's most recent savings account statement (for the period ending July 31, 2014). The TD Bank representative explained in her correspondence that since "[s]avings statements generate on a quarterly basis, the next statement will be generate[d] on October 31, 2014."

24.     In addition to the TD Bank correspondence, Duffy's September 5, 2014 letter provided Cenlar with correspondence from his Duffy's wife, Yulia, and enclosed documentary proof of her income.

25.     By letter dated September 11, 2014, Cenlar wrote to Duffy requesting an "updated 2013 tax return" because it had allegedly received one "with the figures cut off."

26.     On September 18, 2014, Duffy provided Cenlar with another copy of his 2013 tax filings.

27.     By letter dated September 25, 2014, Cenlar wrote to Duffy informing him that his loan modification application was complete, and that said application would be reviewed by an underwriter within 30 days of September 25, 2014.

28.     By letter dated November 5, 2014, Cenlar wrote to Duffy informing him that "[a] property value assessment has been ordered on your property due to your submission of an application for loss mitigation."

29.     By letter dated November 6, 2014, Cenlar wrote to Duffy informing him that his loan modification application was denied and that he had fourteen days to appeal.

30.     Duffy timely appealed on November 20, 2014.

31.     Notwithstanding the pendency of Duffy's appeal, Cenlar sent Duffy a Notice of Intent to Foreclose dated December 4, 2014.

32.     Duffy's appeal was denied without explantion on December 17, 2014.

33.     On January 9, 2015, Duffy reapplied for a loan modification.  Cenlar acknowledged receipt of the new application by letter dated January 14, 2015.

34.     By letter dated January 16, 2015, Cenlar requested a number of documents from Duffy, documents which either did not exist at the time of the letter or ever.  For example, Cenlar requested a "profit and loss statement for 2014" even though Duffy is not a business and was not self-employed at any time during 2014, the facts of which Cenlar was at all times aware.

35.     As of January 16, 2015, then, Cenlar had all of the documents it needed to process Duffy's loan modification application.

36.     Notwithstanding Cenlar's receipt of a facially complete loan modification application, on January 21, 2015, McCabe mailed a dunning letter to Duffy, both to his home address and to the Philadelphia office of his counsel.  Copies of both letters are attached hereto as "Exhibit A."

37.     Although dated January 21, 2015, the dunning letter stated that the "total amount of the debt is **$272,532.06** as of **February 14, 2015**."

38.     Duffy did not owe $272,532.06 on January 21, 2015, and would not have owed that amount on February 14, 2015, either, absent inclusion of unauthorized billing for things such as attorney's fees (the dunning letter explicitly stated that "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your debt.").

39.     The dunning letter stated further that "IF YOU NOTIFY US IN WRITING, WITHIN (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, THAT YOU DISPUTE

THE DEBT, OR ANY PORTION OF THE DEBT, THEN WE WILL OBTAIN

VERIFICATION OF THE DEBT . . . AND MAIL SUCH VERIFICATION . . . TO YOU."

40.     Via certified mail to McCabe dated February 12, 2015 (a cost incurred by Duffy),

Duffy disputed the amount of the alleged debt set forth in the January 21, 2015 dunning letter.

41.     McCabe received the February 12, 2015 letter the following day, but never

responded.

42.     Meanwhile, on February 4, 2015, Duffy provided Cenlar with financial

documents that had recently become available.

43.     By letters dated March 9, 2015, March 30, 2015, and April 16, 2015, Cenlar

requested documents that did not exist or that had already been provided or that only became

necessary because certain documents went stale as a result of Cenlar's delay in processing

Duffy's loan modification application.  Each letter gave less time for compliance than the last.

44.     Although the aforementioned letters were dated March 9, 2015, March 30, 2015,

and April 16, 2015, they were not received in the mail by Duffy until at least seven days after the

date of each letter.  For example, the March 30, 2015 letter was received by Duffy on April 8,

2015.  Upon information and belief, the letters were mailed from central New Jersey to

Philadelphia, meaning Cenlar could not have mailed those letters until several days after the

dates contained therein.

45.     Frustrated with Cenlar's behavior over the last year, on March 23, 2015, Duffy

incurred the cost of express-mailing a letter to Cenlar containing several requests for information

related to the servicing of Duffy's loan and his loan modification application in particular.

46.     A copy of the March 23, 2015 letter is attached hereto as "Exhibit B," and its

contents are incorporated into this pleading.

47.    The March 23, 2015 letter was mailed to Cenlar at "PO Box 77423, Ewing, NJ 08618," which is the address specifically designated by Cenlar for its receipt of Qualified Written Requests ("QWRs") under RESPA.

48.    Cenlar received Duffy's March 23, 2015 letter on March 24, 2015, but never responded.

49.    By letter dated April 30, 2015, Cenlar communicated to Duffy that his pending loan modification application was complete and would be reviewed within 30 days.

50.    Shortly thereafter, Duffy was overcome by stress and anxiety from both McCabe's debt-collection efforts and having his ability to stay in his home decided by a company (Cenlar) that had (1) failed properly respond to a previous loan modification application; (2) made each document request more difficult to comply with than the last one; (3) demonstrated incredible disorganization through irrelevant document requests; and (4) failed to respond to his March 23, 2015 correspondence.  As a result, on or around May 11, 2015, Duffy was admitted to the hospital with complaints of chest pain and shortness of breath.  He spent three days in the hospital, during which time his recorded blood pressure was much higher than his normal level.

51.    By letter dated May 13, 2015 (and received on May 26, 2015), Cenlar communicated to Duffy that his "loan has been audited, based on random selection."  The purpose of the letter was to question whether Duffy was residing at the Philadelphia address of his attorney, rather than his home address of 1510 River Avenue, Point Pleasant, New Jersey 08742.

52.    By letter dated May 22, 2015 (and received June 3, 2015), Cenlar denied Duffy's loan modification application because of "excessive obligations outside of your monthly

mortgage commitment . . . ."

53.     Duffy timely appealed Cenlar's May 22, 2015 decision, on June 5, 2015.  He is not optimistic that Cenlar will meaningfully review his appeal, and continues to be distraught by the way Cenlar has mishandled his loss mitigation applications.

## V.     CLAIMS

### Count I – RESPA, 12 U.S.C. § 2605(e)(1)(A)
### (vs. Cenlar)

54.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

55.     Duffy's March 23, 2015 letter, the contents of which are incorporated here by reference, constituted a Qualified Written Request ("QWR") under 12 U.S.C. § 2605(e).

56.     Under 12 U.S.C. § 2605(e)(1)(A), Cenlar had until March 29, 2015, to "provide a written response acknowledging receipt of the correspondence."  It failed to do so.

57.     Cenlar failed to comply with 12 U.S.C. § 2605(e)(1)(A).

58.     Cenlar's failure to comply with 12 U.S.C. § 2605(e)(1)(A) and acknowledge Duffy's QWR caused him emotional distress, anger, and frustration.  Cenlar's conduct also caused Duffy great anxiety, for if Cenlar could not perform a simple task like acknowledging receipt of a document, it made Duffy question whether it could ever properly consider his pending request for a loan modification.

59.     Cenlar has engaged in a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605, as evidenced in part by the significant number of fact-supported lawsuits its servicing misconduct has engendered.

**Count II – RESPA, 12 U.S.C. § 2605(e)(2)(C)**
**(vs. Cenlar)**

60.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

61.     Under 12 U.S.C. § 2605(e)(2)(C), Cenlar had until April 23, 2015 to (1) conduct an investigation relative to Duffy's QWR, and (2) provide Duffy "with a written explanation or clarification that includes--(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."

62.     Cenlar failed to perform any of the actions required by 12 U.S.C. § 2605(e)(2)(C), timely or otherwise.

63.     Cenlar's failure to respond to Duffy's QWR caused him emotional distress, anger and frustration.  Duffy had done everything requested of him by Cenlar related to the tortuous, year-long loan modification process, despite Cenlar's often impossible requests for documents and general, routine failure to adequately communicate with Duffy.  Cenlar's conduct caused Duffy further anxiety insofar as it confirmed that Cenlar would not—and in fact, did not—give Duffy a fair shake with respect to his loan modification application.

64.     Cenlar has engaged in a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605, as evidenced in part by the significant number of fact-supported lawsuits its servicing misconduct has engendered.

**Count III – RESPA Regulation X, 12 C.F.R. § 1024.41(c)**
**(vs. Cenlar)**

65.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

66.     Under 12 C.F.R. § 1024.41(c), "[i]f a servicer receives a complete loss mitigation

application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

67.     By letter dated September 25, 2014, Cenlar communicated to Duffy that it was in possession of a completed loan modification application from Duffy.

68.     Cenlar did not evaluate Duffy for all loss mitigation options available to him within 30 days of its receipt of Duffy's completed loan modification application.

69.     Cenlar did not provide Duffy with a written notice of its determination on Duffy's loan modification application within 30 days of its receipt of Duffy's completed application.

70.     According to 12 C.F.R. § 1024.41(a), "[a] borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

71.     Cenlar's failure to either timely or properly evaluate Duffy for loss mitigation caused him emotional distress, anger, and frustration.  Cenlar's conduct also caused Duffy great anxiety as he waited an unduly long time for a determination on his loan modification— effectively a determination as to whether Duffy and his family would be able to stay in their home.

72.     Cenlar has engaged in a pattern or practice of noncompliance with the requirements of 12 C.F.R. § 1024.41(c) and 12 U.S.C. § 2605.

### Count IV – RESPA Regulation X, 12 C.F.R. § 1024.41(b)(2)(ii)
### (vs. Cenlar)

73.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

74.     Under 12 C.F.R. § 1024.41(b)(2)(ii), letters like those from Cenlar dated March 9, 2015, March 30, 2015, and April 16, 2015, that were mailed to Duffy by Cenlar "must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete."

75.     The March 30, 2015 letter was mailed to Duffy several days after that date, and only provided a 16-day compliance window.

76.     The April 16, 2015 letter was mailed to Duffy several days after that date, and only provided a 15-day compliance window.

77.     Sixteen- and fifteen-day compliance windows are unreasonable for purposes of § 1024.41(b)(2)(ii), and even more so because the March 30, 2015 and April 16, 2015 letters were not timely mailed to Duffy, effectively and substantially reducing the compliance windows.

78.     According to 12 C.F.R. § 1024.41(a), "[a] borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

79.     Cenlar's unreasonable document requests caused Duffy emotional distress, anger, and frustration, as he unnecessarily scrambled for documents that had been issued by his banks or employers since the time of his previous documentary submission to Cenlar.

80.     Cenlar has engaged in a pattern or practice of noncompliance with the requirements of 12 C.F.R. § 1024.41(b)(2)(ii) and 12 U.S.C. § 2605.

### Count V – RESPA Regulation X, 12 C.F.R. § 1024.41(c)(1)(ii)
### (vs. Cenlar)

81.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

82.     Under 12 C.F.R. § 1024.41(c)(1)(ii), "If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of

receiving a borrower's complete loss mitigation application, a servicer shall . . . [p]rovide the borrower with a notice in writing stating . . . if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

83.     Cenlar's May 22, 2015 letter denying Duffy's loan modification application failed to give the notice required by 12 C.F.R. § 1024.41(c)(1)(ii) because it did not say anything about Duffy's "right to appeal" or the "amount of time" he had to file an appeal, or "any requirements for making an appeal."

84.     The May 22, 2015 letter to Duffy from Cenlar did not state that "the appeal process in [12 C.F.R. § 1024.41] of this section is not applicable."

85.     According to 12 C.F.R. § 1024.41(a), "[a] borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

86.     Cenlar's failure to apprise Duffy of his appeal rights caused him emotional distress, anger, and frustration, because this was just the latest in a string of loan-servicing failures by Cenlar, which increasingly fortified Duffy's belief that he had not been and never would be fairly and properly evaluated for a loan modification, making it seem impossible to cure any loan-payment default and stay in his home with his family.

87.     Cenlar has engaged in a pattern or practice of noncompliance with the requirements of 12 C.F.R. § 1024.41(c)(1)(ii) and 12 U.S.C. § 2605.

### Count VI – FDCPA, 15 U.S.C. § 1692e(2)
### (vs. McCabe)

88.     Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

89.    Duffy is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(3).

90.    McCabe is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

91.    McCabe's January 21, 2015 dunning letter was an attempt to collect a "debt," as that term is defined in 15 U.S.C. § 1692a(5).

92.    McCabe regularly attempts to collect consumer debts alleged to be owed to third parties.

93.    The FDCPA prohibits false representations of the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2).

94.    A debt collector's communication under 15 U.S.C. § 1692g requires a statement of "the amount of the debt" allegedly owed by the consumer.  15 U.S.C. § 1692g(a)(1).

95.    The section 1692(g) notice must set forth the amount of the debt owed as of the date of the notice.

96.    A section 1692(g) notice that sets forth the amount of a hypothetical future debt does not comply with 15 U.S.C. § 1692g(a)(1), and thus violates 15 U.S.C. § 1692e(2).

97.    McCabe's January 21, 2015 dunning letter by its own terms did not set forth the amount of the debt allegedly owed by Duffy as of January 21, 2015.

98.    McCabe's January 21, 2015 dunning letter in any event falsely conveyed the amount of the debt Duffy could properly owe on February 14, 2015.

99.    McCabe's confusing and false statements in its January 21, 2015 dunning letter caused Duffy anger, frustration, and emotional distress, because he had worked hard to bring his principal loan balance to an amount less than what he was getting credit for.

### Count VII – FDCPA, 15 U.S.C. § 1692c(a)(2)
### (vs. McCabe)

100.   Duffy incorporates all prior and subsequent allegations of fact in this Complaint as if they were expressly set forth here.

101.   Pursuant to 15 U.S.C. § 1692c(a)(2), "[w]ithout the prior consent of the consumer given directly to the debt collector . . ., a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ."

102.   Duffy was represented by counsel when McCabe mailed its January 21, 2015 dunning letter to both Duffy's home address and the Philadelphia address of Duffy's counsel.

103.   McCabe knew Duffy was represented by counsel when it sent its January 21, 2015 dunning letter to Duffy's home address and knew, or could have readily ascertained, the address of said counsel.

104.   McCabe violated 15 U.S.C. § 1692c(a).

### VI.   RELIEF

a.   On Count I, Duffy demands a judgment for money damages against Cenlar, to include actual damages under 12 U.S.C. § 2605(f)(1)(A), up to $2,000 in statutory damages under 12 U.S.C. § 2605(f)(1)(B), and attorney's fees and costs under 12 U.S.C. § 2605(f)(3).

b.   On Count II, Duffy demands a judgment for money damages against Cenlar, to include actual damages under 12 U.S.C. § 2605(f)(1)(A), up to $2,000 in statutory damages under 12 U.S.C. § 2605(f)(1)(B), and attorney's fees and costs under 12 U.S.C. § 2605(f)(3).

c.   On Count III, Duffy demands a judgment for money damages against Cenlar, to include actual damages under 12 U.S.C. § 2605(f)(1)(A), up to $2,000 in statutory damages under 12 U.S.C. § 2605(f)(1)(B), and attorney's fees and costs under 12 U.S.C. § 2605(f)(3).

    d.     On Count IV, Duffy demands a judgment for money damages against Cenlar, to include actual damages under 12 U.S.C. § 2605(f)(1)(A), up to $2,000 in statutory damages under 12 U.S.C. § 2605(f)(1)(B), and attorney's fees and costs under 12 U.S.C. § 2605(f)(3).

    e.     On Count V, Duffy demands a judgment for money damages against Cenlar, to include actual damages under 12 U.S.C. § 2605(f)(1)(A), up to $2,000 in statutory damages under 12 U.S.C. § 2605(f)(1)(B), and attorney's fees and costs under 12 U.S.C. § 2605(f)(3).

    f.     On Count VI, Duffy demands a judgment for money damages against McCabe, to include actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2), and attorney's fees and costs under 15 U.S.C. § 1692k(a)(3).

    g.     On Count VII, Duffy demands a judgment for money damages against McCabe, to include statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2), and attorney's fees and costs under 15 U.S.C. § 1692k(a)(3).

    h.     Duffy demands pre-judgment and post-judgment interest on his claims.

    i.     Duffy demands a trial by jury on all issues and claims so triable.

## VII.   CERTIFICATION

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies to the best of his knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted:

WILLIAMS CUKER BEREZOFSKY LLC

Joseph Alan Venti, Esq. (SBN 031742008)
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
856-667-0500 (Fax: 856-667-5133)
joeventi@wcblegal.com

*Counsel for Plaintiff, George J. Duffy*

LAW OFFICES
# McCABE, WEISBERG & CONWAY, P.C.
SUITE 201
216 HADDON AVENUE
WESTMONT, NJ 08108
(856) 858-7080
FAX (856) 858-7020

SUITE 210
145 HUGUENOT STREET
NEW ROCHELLE, NY 10801
(914)-636-8900
FAX (914) 636-8901

SUITE 1400
123 S. BROAD ST
PHILADELPHIA, PA 19109
(215) 790-1010
FAX (215) 790-1274

SUITE 130
DELAWARE CORPORATE CENTER I
ONE RIGHTER PARKWAY
WILMINGTON, DE 19803
(302) 409-3520
FAX 855-425-1980

SUITE 800
312 MARSHALL AVENUE
LAUREL, MD 20707
(301) 490-3361
FAX (301) 490-1568
Also servicing the District of Columbia

SUITE 203
722 E. MARKET STREET
LEESBURG, VA 20176
(571) 489-9350
FAX: (855) 845-2383

SUITE S206
1 HUNTINGTON QUADRANGLE,
MELVILLE, NY 11747
(631) 812-4084
FAX (855) 845-2584

January 21, 2015

George J. Duffy
1515 Market Suite 1300
Philadelphia, Pennsylvania 19102

Loan No. ████9522
Property Address  1510 River Avenue, Borough of Point Pleasant, New Jersey 08742

Dear George J. Duffy:

McCabe, Weisberg & Conway is a debt collector. We have been retained in connection with the debt identified in this notice. At this time, no attorney with this firm has personally reviewed the particular circumstances of your debt. However, we write to provide you with this **important information** concerning the debt.

## **IMPORTANT NOTICE – PLEASE READ CAREFULLY!**

1.       The total amount of the debt is **$272,532.06** as of **February 14, 2015**. Because interest, late charges, and other fees and charges may vary from day to day, if you wish to pay off this debt the amount due on the day you pay the debt may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary after your payment is received.

2.       The name of the creditor to whom your debt is owed is **Police & Firemen's Retirement System Board of Trustees by its Administrative Agent New Jersey Housing & Mortgage Finance Agency**.

3.       UNLESS YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, WE WILL ASSUME THAT THE DEBT IS VALID.

4.       IF YOU NOTIFY US IN WRITING, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, THAT YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, THEN WE WILL OBTAIN VERIFICATION OF THE DEBT, OR A COPY OF A JUDGMENT AGAINST YOU, AND MAIL SUCH VERIFICATION OR JUDGMENT TO YOU.



File # 15-204262
Page 1

5.      If the creditor named in paragraph 2 above is not the original creditor, then, IF YOU SEND A WRITTEN INQUIRY TO US WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

6.      All correspondence to us should be addressed as follows: **McCABE, WEISBERG & CONWAY, 216 HADDON AVENUE, SUITE 201, WESTMONT, NJ 08108**.

7.      THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

8.      Under the fair foreclosure act and all other state or other applicable law, including but not limited to bankruptcy law, you may have **additional rights** concerning this debt or foreclosure of the property securing it, and nothing in this notice limits or otherwise affects those separate rights.  If you have obtained a bankruptcy discharge this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for the debt.

LAW OFFICES

# McCABE, WEISBERG & CONWAY, P.C.

SUITE 201
216 HADDON AVENUE
WESTMONT, NJ 08108
(856) 858-7080
FAX (856) 858-7020

SUITE 210
145 HUGUENOT STREET
NEW ROCHELLE, NY 10801
(914)-636-8900
FAX (914) 636-8901

SUITE 1400
123 S. BROAD ST.
PHILADELPHIA, PA 19109
(215) 790-1010
FAX: (215) 790-1274

SUITE 130
DELAWARE CORPORATE CENTER I
ONE RIGHTER PARKWAY
WILMINGTON, DE 19803
(302) 409-3520
FAX 855-425-1980

SUITE 800
312 MARSHALL AVENUE
LAUREL, MD 20707
(301) 490-3361
FAX (301) 490-1568
Also servicing the District of Columbia

SUITE 203
722 E MARKET STREET
LEESBURG, VA 20176
(571) 449-9350
FAX (855) 845-2580

SUITE S206
1 HUNTINGTON QUADRANGLE,
MELVILLE, NY 11747
(631) 812-4084
FAX (855) 845-2584

January 21, 2015

George J. Duffy
1510 River Avenue
Borough of Point Pleasant, New Jersey 08742

Loan No. ████9522
Property Address: 1510 River Avenue, Borough of Point Pleasant, New Jersey 08742

Dear George J. Duffy:

McCabe, Weisberg & Conway is a debt collector. We have been retained in connection with the debt identified in this notice. At this time, no attorney with this firm has personally reviewed the particular circumstances of your debt. However, we write to provide you with this **important information** concerning the debt.

### IMPORTANT NOTICE – PLEASE READ CAREFULLY!

1.      The amount of the debt is **$272,532.06** as of **February 14, 2015**. Because interest, late charges, and other fees and charges may vary from day to day, if you wish to pay off this debt the amount due on the day you pay the debt may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary after your payment is received.

2.      The name of the creditor to whom your debt is owed is **Police & Firemen's Retirement System Board of Trustees by its Administrative Agent New Jersey Housing & Mortgage Finance Agency.**

3.      UNLESS YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, WE WILL ASSUME THAT THE DEBT IS VALID.

4.      IF YOU NOTIFY US IN WRITING, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, THAT YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, THEN WE WILL OBTAIN VERIFICATION OF THE DEBT, OR A COPY OF A JUDGMENT AGAINST YOU, AND MAIL SUCH VERIFICATION OR JUDGMENT TO YOU.



File # 15-201262
Page 1

5.      If the creditor named in paragraph 2 above is not the original creditor, then, IF YOU SEND A WRITTEN INQUIRY TO US WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

6.      All correspondence to us should be addressed as follows: **McCABE, WEISBERG & CONWAY, 216 HADDON AVENUE, SUITE 201, WESTMONT, NJ 08108**.

7.      THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

8.      Under the fair foreclosure act and all other state or other applicable law, including but not limited to bankruptcy law, you may have **additional rights** concerning this debt or foreclosure of the property securing it, and nothing in this notice limits or otherwise affects those separate rights.  If you have obtained a bankruptcy discharge this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for the debt.



**Williams
Cuker
Berezofsky,**
L L C
*Protecting Rights for 30 Years*
www.wcblegal.com

1515 Market Street
Suite 1300
Philadelphia, PA
19102

215.557.0099
215.557.0673 *fax*

Woodland Falls
Corporate Center
210 Lake Drive East
Suite 101
Cherry Hill, NJ
08002-1163

856.667.0500
856.667.5133 *fax*

Mark R. Cuker[1]
Gerald J. Williams[2]
Esther E. Berezofsky[2]
Beth G. Cole[2]
Alan H. Sklarsky[2]
Andrew F. Erba[2][4][5]
Samuel Abloeser[2]
Kevin Haverly[2]*
Maria C. Janoski[2]
Joseph A. Venti[2]
Christopher Markos[2]
Michael J. Quirk[2][3]

[1]Member, Pennsylvania Bar
[2]Member, New Jersey Bar
[3]Member, Conn. Bar
[4]Member, Wash., D.C. Bar

March 23, 2015

**<u>VIA UPS Overnight Mail</u>**
CENLAR
PO Box 77423
Ewing, NJ 08618

>      Re:    ***George J. Duffy*** (the Borrower)
>             <u>**Borrower Address:**</u>  **1510 River Ave., Pt. Pleasant Boro, NJ 08742**
>             <u>**Loan/Account Number:**</u>  █████9522

Cenlar:

I am counsel to George J. Duffy ("Mr. Duffy"), and write on his behalf.  Mr. Duffy is the borrower of the above-referenced mortgage loan.  You (Cenlar) are advised that this is a **Qualified Written Request** under RESPA, 12 U.S.C. § 2605(e).

<u>Request for Information #1</u>
Please produce all documents used to support your July 14, 2014 denial of a loan modification application (letter enclosed for your reference) submitted by Mr. Duffy.

<u>Request for Information #2</u>
Please produce a copy of any consumer credit report you received in connection with Mr. Duffy's application for a loan modification that you denied on July 14, 2014.

<u>Request for Information #3</u>
Please identify any and all reasons why Mr. Duffy's income was "insufficient" for any of your loss mitigation programs, per your July 14, 2014 letter.

<u>Request for Information #4</u>
With respect to your letter to Mr. Duffy dated September 11, 2014 (letter enclosed for your reference), it is requested that you produce a copy of the 2013 Tax Return you stated you "received . . . with the figures cut off."



1





* Certified by the Supreme Court of New Jersey as a Civil Trial Attorney

Request for Information #5
   Did an underwriter review Mr. Duffy's then-pending application for a loan modification within 30 days of September 25, 2014?

Request for Information #6
   Between September 25, 2014 and November 5, 2014, did you communicate with the law firm of McCabe, Weisberg & Conway about the above-referenced mortgage loan?

Request for Information #7
   Please produce all documents used to support your November 6, 2014 denial of Mr. Duffy's application for a loan modification (letter enclosed for your reference).

Request for Information #8
   When you had Mr. Duffy's property inspected for valuation purposes on November 5, 2014 (letter enclosed for your reference), did you know on that date that you were going to deny Mr. Duffy's application for a loan modification on November 6, 2014?

Request for Information #9
   What was the "housing expense to income ratio" you calculated/used for Mr. Duffy leading up to your November 6, 2014 denial of his application for a loan modification?

Request for Information #10
   What was the "housing expense to income ratio" that you characterized in your November 6, 2014 denial-letter as a requirement for your loan modification program?

Request for Information #11
   Produce all documents you relied on to calculate Mr. Duffy's "housing expense to income ratio" for purposes of his loan modification application that you denied on November 6, 2014.

Request for Information #12
   Produce the document(s) from which you derived the "housing expense to income ratio" that you characterized (in your November 6, 2014 letter to Mr. Duffy) as a requirement for a loan modification.

Request for Information #13
   On what date did you mail to Mr. Duffy or his counsel the November 6, 2014 letter communicating the denial of Mr. Duffy's application for a loan modification?

Request for Information #14
   From what address did you mail to Mr. Duffy or his counsel the November 6, 2014 letter communicating the denial of Mr. Duffy's application for a loan modification?

Request for Information #15
   Provide the reason(s) why you did not respond to the undersigned's November 14, 2014 request (letter enclosed for your reference) for certain documents and information.

Request for Information #16
Identify the name(s) of any underwriter(s) who reviewed Mr. Duffy's application for a
loan modification that was denied on November 6, 2014.

Request for Information #17
Identify the name of the "underwriter" referenced in your December 17, 2014 letter
(enclosed for your reference) denying Mr. Duffy's appeal of the November 6, 2014 denial of his
loan modification application.

Request for Information #18
Produce a copy of any consumer credit report you received from CBA Information
Solutions (825 East Gate Blvd., Suite 310, Garden City, NY 11530) in connection with Mr.
Duffy's application for a loan modification that was denied on November 6, 2014.


Thank you for your prompt attention to this communication.


Very truly yours,


Joseph Alan Venti, Esq.



ENCLOSURES

cc:  George J. Duffy (via email)

0039969522 Y2



(800) 223-6527

July 14, 2014

Hours of operation:
Customer Service:Monday - Friday, 8:30 AM to 8:00 PM ET
Collections Dept.:Monday - Friday, 8:30 AM to 10:00 PM ET

George J Duffy
1510 River Avenue
Point Pleasant Boro, NJ 08742

RE: Loan Number: ████9522
Property Address: 1510 River Ave
Point Pleasant Boro NJ 08742

Dear Customer:

We have completed our review of your request for a loan modification or other foreclosure alternative and have determined that you are ineligible for the reasons listed below:

LOAN MODIFICATION
After reviewing your financial information it was determined that your income is insufficient to quality for any foreclosure alternative programs at this time.

You may obtain additional documentation to support the denial decision upon written request.

You have 14 days from the date of this letter to provide evidence that our determination was in error and to appeal the denial. In order to appeal, you must submit specific documentation in support of your belief that the decision was in error. The documentation must be submitted in writing to:

Loan Workout Department, PO Box 211091, Eagan, MN 55121

You may fax the information to: Loan Workout Department, 609-718-2655

The documentation must be submitted no later than 14 days from the date of this letter. If you do not submit the appeal within the time period provided and foreclosure proceedings were previously initiated, the proceedings will resume upon the expiration of the 14 day appeal period.

Page 2
Loan Number: ██████9522

In order to be considered for other foreclosure prevention programs that may be available such as other loan modification options, deed in lieu, short sale please contact us to discuss.

If you have any questions regarding the denial or appeal process please do not hesitate to contact us at 800-223-6527.

Please note that you can seek assistance at no charge from a HUD-approved housing counselor and can request assistance in understanding these notices by calling the HOPE Hotline number at 888-995-HOPE.

Sincerely,


Loan Mitigation Department
800-223-6527 ext 5599


The consumer reporting agency contacted that provided information that influenced our decision in whole or in part was CBA Information Solutions, P.O. Box 509124, San Diego, CA 92150, phone number 1-800-648-2513. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to CBA Information Solutions.

If you have any questions regarding this letter, you should contact us at: Loan Workout Department 425 Phillips Boulevard, Ewing, NJ 08618 or call us at  1-800-223-6527.

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is:

Office of the Comptroller of the Currency
Customer Assistance Group
1301 McKinney Street, Suite 3450
Houston, TX 77010-9050

LM005 015 JZC Y2

ASSET 58

0039969522 Y2



**CENTRAL LOAN ADMINISTRATION & REPORTING**

(800) 242-7178

September 11, 2014

Hours of operation:
Customer Service:Monday - Friday, 8:30 AM to 8:00 PM ET
Collections Dept.:Monday - Friday, 8:30 AM to 10:00 PM ET

George J Duffy
C/o Joseph Alan Veni
1515 Market Suite 1300
Philadelphia, PA 19102

RE: Loan Number:          9522
Property Address:    1510 River Ave
                     Point Pleasant Boro NJ 08742

Dear Customer:

We have received your request to be considered for a loan modification or other foreclosure alternative. The application is incomplete. In order for us to determine your eligibility for a loan modification or other foreclosure alternative, we need you to supply us with all of the following documents and/or information.

UPDATED 2013 TAX RETURN ALL PAGES AND SCHEDULED, WE RECEIVED ONE WITH THE FIGURES CUT OFF.

The documentation you did submit expires on the dates listed below.  If on the date you provide the missing documentation, the expiration date for any of the previously submitted documentation has passed, you will need to provide updated versions of these submissions as well. If you do not provide the expired documentation with the missing documentation it will affect our ability to process your application.

HARDSHIP LETTER EXPIRE 11-19-14
PAYSTUB EXPIRE 11-8-14,11-22-14,
BANK STATEMENT EXPIRE 7-31-14 SAVINGS QUARTERLY
PAYSTUB EXPIRE 12-1-14(RESOURCES HUMAN)YULIA
PAYSTUB EXPIRE 10-17, 10-24, 11-14, 10-6, 11-2
LOAN STATEMENT
FINANCIAL STATEMENT EXPIRE 11-15-14
BANK STATEMENT EXPIRE (8464)10-11, 11-11
PENSION STATEMENT JUNE JULY
PAYSTUB 10-25(US SECURITY) 10-18-14

You may fax the information to:Loan Workout Department , 609-718-2655, or mail to:

Loan Workout Department
P.O. Box 77408
Ewing, NJ 08628-6408

We will allow 30 days from the date of this letter for you to provide the requested information and if it is not received within the 30 day period, your request for a foreclosure alternative may be denied.

LM003 054 IXA Y2

At this time you should consider contacting servicers of any other mortgage loans that are secured by the same property to discuss available Loss Mitigation options. (1024.41 (b)(2)(i)(B).

Failure to submit all the required documentation or information may result in your ineligibility for a loan modification or foreclosure alternative and any foreclosure proceedings will continue, including referral to foreclosure if the loan was not previously referred.

Please contact us at the telephone number referenced in this letter if you have any questions.

This letter and the loan workout review process shall not waive any of our rights or your obligations under the note or mortgage. You are responsible to continue making your loan payments (to the extent that you have not been relieved of your obligations under the note if discharged in a Chapter 7 Bankruptcy proceeding.)

Please note that you can seek assistance at no charge from a HUD-approved housing counselor and can request assistance in understanding these notices by calling the HOPE Hotline number at 888-995-HOPE, or you can reach them via the web at: www.hud.gov/offices/hsg/sfh/hcc/fc.

Sincerely,

Loan Workout Department

LM003 054 IXA Y2   SPEMOD -

0039969522 Y2



**CENLAR**®

CENTRAL LOAN ADMINISTRATION & REPORTING

(800) 242-7178

November 05, 2014

Hours of operation:
Customer Service:Monday - Friday, 8:30 AM to 8:00 PM ET
Collections Dept.:Monday - Friday, 8:30 AM to 10:00 PM ET

George J Duffy
C/o Joseph Alan Venti
1515 Market Suite 1300
Philadelphia PA  19102

Loan Number: ████9522
Property Address: 1510 River Ave
                          Point Pleasant Boro NJ 08742

Dear Borrower(s):

A property value assessment has been ordered on your property due to your submission of an application for Loss Mitigation. This information may be used in the decision of your application. If a subsequent valuation report or appraisal is prepared when reviewing your application, we will provide you with those copies as well.

Attached please find a copy of the most recent valuation which was completed on your property after we received your application for Loss Mitigation.

Sincerely,

Loss Mitigation Department

LM055 004 SKD Y2

0039969522 Y2



(800) 223-6527

November 06, 2014

Hours of operation:
Customer Service:Monday - Friday, 8:30 AM to 8:00 PM ET
Collections Dept.:Monday - Friday, 8:30 AM to 10:00 PM ET

George J Duffy
C/o Joseph Alan Venti
1515 Market Suite 1300
Philadelphia, PA 19102

RE: Loan Number: ██████9522
Property Address: 1510 River Ave
Point Pleasant Boro NJ 08742

Dear Customer:

We have completed our review of your request for a loan modification or other foreclosure alternative and have determined that you are ineligible for the reasons listed below:

Loan Modification
In completing our review of your housing expense to income ratio we determined that it does not meet the requirement for a loan modification.

You may obtain additional documentation to support the denial decision upon written request.

You have 14 days from the date of this letter to provide evidence that our determination was in error and to appeal the denial. In order to appeal, you must submit specific documentation in support of your belief that the decision was in error. The documentation must be submitted in writing to:

Loan Workout Department, P.O. Box 77408, Ewing, NJ 08628-6408

You may fax the information to: Loan Workout Department, 609-718-2655

The documentation must be submitted no later than 14 days from the date of this letter. If you do not submit the appeal within the time period provided and foreclosure proceedings were previously initiated, the proceedings will resume upon the expiration of the 14 day appeal period.

Page 2
Loan Number: ████9522

In order to be considered for other foreclosure prevention programs that may be available such as other home retention options, deed in lieu, or short sale please contact us to discuss.

If you have any questions regarding the denial or appeal process please do not hesitate to contact us at 800-223-6527.

Please note that you can seek assistance at no charge from a HUD-approved housing counselor and can request assistance in understanding these notices by calling the HOPE Hotline number at 888-995-HOPE.

Sincerely,


Loan Mitigation Department
800-223-6527 ext 5599

The consumer reporting agency contacted that provided information that influenced our decision in whole or in part was CBA Information Solutions, P.O. Box 509124, San Diego, CA 92150, phone number 1-800-648-2513. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to CBA Information Solutions.

If you have any questions regarding this letter, you should contact us at: Loan Workout Department 425 Phillips Boulevard, Ewing, NJ 08618 or call us at 1-800-223-6527.

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is:

Office of the Comptroller of the Currency
Customer Assistance Group
1301 McKinney Street, Suite 3450
Houston, TX 77010-9050

LM005 016 JZC Y2


ASSET 54



Williams
Cuker
Berezofsky, LLC

Protecting Rights for 30 Years

www.wcblegal.com

1515 Market Street
Suite 1300
Philadelphia, PA
19102

215.557.0099
215.557.0673 fax

Woodland Falls
Corporate Center
210 Lake Drive East
Suite 101
Cherry Hill, NJ
08002-1163

856.667.0500
856.667.5133 fax

Mark R. Cuker[†]
Gerald J. Williams[†]
Esther E. Berezofsky[†]
Beth G. Cole[‡]
Alan H. Sklarsky[*]
Andrew F. Erba[†‡]
Samuel Abloeser
Kevin Haverty[†‡]
Maria C. Janeski[‡]
Joseph A. Venti[†]
Christopher Markos[‡]
Michael J. Quirk[†‡]

[†] Member Pennsylvania Bar
[‡] Member New Jersey Bar
[*] Member Penn Bar
[*] Member Wash, D.C. Bar

**\* \* \* TIME SENSITIVE \* \* \***

November 14, 2014

**<u>VIA FACSIMILE</u>**
CENLAR
Attn:  Underwriting Department
425 Phillips Blvd.
Ewing, NJ 08618
Fax:   609-718-2655

> Re:   *George J. Duffy*, 1510 River Ave., Pt. Pleasant Boro, NJ 08742
> <u>Loan #█████9522 – Nov. 6, 2014 loan modification denial</u>

Dear underwriters:

   This afternoon I received the enclosed letter from Cenlar, dated November 6, 2014, advising my client George Duffy that he is "ineligible" for a loan modification because his "housing expense to income ratio . . . does not meet the requirement for a loan modification." The letter permits fourteen days to appeal, almost **two thirds of which** you have unreasonably, deceptively, and unlawfully let expire by (1) either delaying the mailing of the November 6, 2014 letter or back-dating it; and (2) failing to call me when a decision was reached, as promised by your various agents.  Notably, the enclosed letter is dated only one day after a property value assessment was completed.

   The November 6, 2014 letter states that we "may obtain additional documentation to support the denial decision upon written request."  Let this writing serve as a request for immediate production to me of the following:

1.   The "housing expense to income ratio" you calculated/used for Mr. Duffy.
2.   The "housing expense to income ratio" that you contend is required for your loan modification program.
3.   All documents you relied on to calculate Mr. Duffy's "housing expense to income ratio."
4.   The document(s) from which you derived the "housing expense to income ratio" that you contend is required for a loan modification.





\* Certified by the Supreme Court of New Jersey as a Civil Trial Attorney

Insofar as you are unable to provide this documentation by November 18, 2014, let this writing also serve as a request to **extend by fourteen days** the time in which Mr. Duffy may appeal the adverse loan modification decision.

Let me be clear:  Mr. Duffy intends to submit an appeal of the adverse decision, and reserves all rights he may have to pursue legal claims against Cenlar based on the way in which it has chosen to handle Mr. Duffy's request for loss mitigation relief.

Thank you for your prompt attention to this matter.

Very truly yours,

Joseph Alan Venti, Esq.

ENCLOSURE

cc:  George J. Duffy (via email)



(800) 242-7178

December 17, 2014

George J Duffy
C/o Joseph Alan Venti
1515 Market Suite 1300
Philadelphia PA 19102

RE: Loan Number: ████9522
    Property Address: 1510 River Ave
                      Point Pleasant Boro NJ 08742

Dear Customer:

We have received your request for an appeal of our initial Loss Mitigation
Application decision.  After a careful second review by a different
underwriter, we have reached the same conclusion and therefore are unable
to offer you a loss mitigation option at this time.

If your financial situation changes, or you wish to be reconsidered for
other programs, please contact us at the number referenced in this letter.

Sincerely,

Loss Mitigation Department
800-223-6527

LM052 009 AYC Y2

Page 2
Loan Number: ██████9522

The consumer reporting agency contacted that provided information that
influenced our decision in whole or in part was CBA Information Solutions,
825 East Gate Blvd, Suite 310, Garden City, NY 11530, phone number
1-800-648-2513.  The reporting agency played no part in our decision and is
unable to supply specific reasons why we have denied credit to you.  You
have a right under the Fair Credit Reporting Act to know the information
contained in your credit file at the consumer reporting agency.  You also
have a right to a free copy of your report from the reporting agency, if
you request it no later than 60 days after you receive this notice.  In
addition, if you find that any information contained in the report you
receive is inaccurate or incomplete, you have the right to dispute the
the matter with the reporting agency.  Any questions regarding such
information should be directed to CBA Information Solutions.

If you have any questions regarding this letter, you should contact us at:
Loan Workout Department, 425 Phillips Boulevard, Ewing, NJ 08618 or call
us at 800-223-6527.

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from
discriminating against credit applicants on the basis of race, color
religion, national origin, sex, marital status, age (provided the applicant
has the capacity to enter into a binding contract); because all or part of
the applicant's income derives from any public assistance program; or
because the applicant has in good faith exercised any right under the
Consumer Credit Protection Act.  The federal agency that administers
compliance with this law concerning this creditor is:

Office of the Comptroller of the
Currency Customer Assistance
Group 1301 McKinney Street, Suite 3450
Houston, TX 77010-9050


LM052 009 AYC Y2